June Term,
1861.

STATE ex rel.
CHRISTOPHER

CITY OF POR-
TAGE.

---

STATE ex rel. CHRISTOPHER vs. THE CITY OF PORTAGE.

This court having decided in this case (12 Wis., 562), that it was the duty of the common council of the city of Portage, to provide for the assessment and equalization of a tax for work done on a street in that city, among the several lots liable therefor, according to their respective fronts or size (instead of charging each lot with the cost of the work done in front of it, as the council had undertaken to do), if, under the circumstances, the provisions of the charter in that respect could still be substantially executed, the city filed an answer to the alternative writ of *mandamus*, stating that it was impossible now to make such an equalization, as many of the lot owners had done the work in front of their respective lots, keeping no account of the expense, and the city had no means of ascertaining the amount of work done or its cost. The relator replied that the whole work done was still in existence, and the amount done in front of each lot, and the cost thereof, were still capable of measurement and ascertainment. *Held*, on demurrer, that the reply was sufficient.

APPLICATION for a *Mandamus.*

The affidavit upon which the alternative writ issued, and the decision of the court overruling a motion to quash the

writ, are reported in 12 Wis., 562. An answer was after-
wards filed by the respondent, and a reply by the relator, to _____
which there was a demurrer.

*By the Court,* PAINE, J. After the decision overruling the
motion to quash the alternative writ, an answer was filed by
the respondents, and the relator filed a reply, to which the
respondent has demurred. The answer alleges that the char-
ter which was in force at the time of the making of the con-
tract and the doing of the work set forth in the relation, had
been repealed and a new one adopted in its stead. But it
was not suggested that the city had no power, under the
charter now in force, to collect the sums necessary to pay for
this work, and as no point was made upon it in the argument
of counsel, we shall assume that none is intended to be
made.

The principal reason set forth in the answer, and relied on
in support of this demurrer, why the city authorities should
not proceed to comply with the writ, is the alleged impossi-
bility of making at this time any such equalization among
the several lots fronting on the street where the work was
done, as the charter required. It is said that a large num-
ber of the lot owners did their own work, as the ordinance
permitted, and that they made no measurement and kept no
account of the expense, and that the city has now no means
of ascertaining what was the amount of work or the cost of
it. If this were true, it would follow from our former de-
cision that it would be a good answer to the relation; for
that decision was based entirely on the assumption that it
was still possible to equalize the expense of the whole work
among the several lots according to their front, as required
by the charter. But the reply avers that "the whole work
done is still in existence and susceptible of measurement
and determination as to the whole amount, and the amount
done by each lot owner, and in front of each lot, and the ex-
pense thereof." And this seems to us, upon the grounds
stated in our former decision, to be a good reply. For if
the whole amount of the work can now be measured, we are
unable to see why an estimate may not be made of the en-

June Term,
1861.

STATE ex rel.
CHRISTOPHER
v.
CITY OF POR-
TAGE.

tire value of it, and an apportionment of that amount among the several lots according to their front. It appears that but one contract was let, and in estimating the value of the whole work, it would be done according to the prices in that contract. Then if, upon that estimate, those lots in front of which the owners had done their own work, would be liable for any part of the amount due on the contract, such amounts should be assessed against them respectively, leaving the lots in front of which the contract work was done to pay their due proportion. The amounts so chargeable to the other lots, would, in a case like this, probably be very small, if anything—and might not be worth pursuing as against those lots. But such a calculation would relieve the lots in front of which the contract work was done, of such unjust excess, if any; and leave no objection arising out of the rule of equalization prescribed in the charter, against collecting out of them the full amount apportioned to them.

And there can be no doubt that the other lots would be justly chargeable with any amounts which such a calculation would impose on them. The fact that the owners had done the work in front of them, is no reason why it should not be so. The council may have had the right to allow them to do the work, but it had no right, in consideration of their doing it, to exempt their lots from their full proportion of the expense of the whole.

Upon the facts stated in the reply, we must therefore assume that a proper equalization of the whole expense may yet be had, and must overrule the demurrer.

Whether the same conclusion could be sustained if it had appeared that several different contracts had been let at different prices, may admit of greater doubt.

It is of course unnecessary for us to to say anything upon the allegations concerning the fraudulent letting of the contract, or any of the other matters set forth in the answer, and denied in the reply, as it is suggested that a trial is desired on those issues.

The demurrer is overruled, with costs.